Sherron *v.* Humphreys.

JAMES SHERRON vs. SAMUEL HUMPHREYS.

The vendor, who was the defendant on execution, is a competent witness for the vendee in an action of trespass brought by him against a constable, for taking the property sold. This case falls within that class of cases in which an interested witness is considered competent; because his interest is as great and direct on the one side as the other.

Title to personal property may be proved by parol, and the possession of the vendor, after sale, is not *per se* fraudulent. Fraud cannot be presumed, it must be proved.

That part of the act of November 23d, 1821, which enacts that " the parties to an appeal shall be confined to the same evidence that was offered upon the trial before the justice," means nothing more than that *new* witnesses shall not be introduced on the appeal, except to prove *newly discovered evidence* ; to do which, the affidavit mentioned in the act, is required.

This was a certiorari directed to the Common Pleas of the county of Salem. The case is fully detailed in the opinion of the court, delivered by the Chief Justice. The case was submitted to the court upon the written arguments of counsel.

*A. L. Eakin,* for plaintiff in certiorari.

*R. P. Thompson,* for defendant.

HORNBLOWER, C. J.  This was an action of trespass *de bonis asportatis,* commenced by Sherron against Humphreys, before a justice of the peace; a trial was had and a verdict and judgment rendered for the defendant.  From that Judgment, Sherron appealed to the Court of Common Pleas.  A similar result took place there; and from the judgment of that court the plaintiff now makes his appeal to this court by means of a certiorari to the Common Pleas.

It appears from the whole of the case, as collected from the papers sent up in the cause, that the plaintiff was not in the actual possession of the property at the time it was taken by the defendant, but that it was in the possession of George Dolbow; and that the defendant, Humphreys, justified the taking, under and by virtue of certain executions in his hands, as a constable, against the said George Dolbow.

On the trial of the appeal, the plaintiff offered George Dolbow, as a witness, to prove the sale by him, to the plaintiff, of the property in question, (consisting of a horse, wagon, and harness) and that by the terms of the bargain, which was made in the presence of the defendant, the articles were to remain in the possession of George Dolbow, until he could finish ploughing his corn; and that the plaintiff was to have the property when he wanted it, or should send for it.  This evidence was objected to by the defendant, the objection sustained by the court, and the evidence rejected.

It is insisted by the defendant's counsel, that this decision of the Court of Common Pleas was right, for several reasons; and

First. Because George Dolbow was interested in the event of the cause.  But it is obvious that his interest, if he had any, was the same in any event of the cause.  This case falls directly within that class of cases in which an interested witness, is considered competent; because his interest is as great and direct on the one side as the other.  *Woodruff* v. *Smith,* 1 *Halst.* 214; *Harwood* v. *Murphy,* 4 *Halst.* 215.

If the plaintiff failed in the suit and lost the property, the witness would, under certain circumstances, be liable to re-

Sherron *v.* Humphreys.

spond to him for the consideration money. If, on the other hand, the defendant failed to establish his right to take the property in execution, the defendant would remain debtor to the plaintiffs in execution to the value of the property.

I have said, that under certain circumstances, the witness would be liable to respond to the plaintiff, for the consideration money, in case he failed in the suit.

That would be the case, if at the time of the sale, the witness had no title to the property. He would then have been liable to his vendee, upon the implied warranty of title, attaching to every sale of chattels.

But it is material to remark in this case, that the witness' title to the property was not impeached; there was no dispute about *his* title. Both parties claimed under him. It was a struggle between a purchaser and a creditor. The witness' interest, instead of being neutralized and balanced between the parties, was all on the side of the defendant. For, if the sale of the property was rightfully made by the witness to the plaintiff, then the seizure of it by the constable, would not render the witness liable to the plaintiff. It would be a matter between the plaintiff and the constable. If the plaintiff lost the property in the struggle, it would be his misfortune, and not the witness' fault. The plaintiff could only have recourse to his vendor, for defect of title; and that could not be pretended, since both parties claimed under him. So on the other hand, if the constable established his right to seize the property, on the ground of a fraudulent transfer of it to the plaintiff, to defeat the creditors of Dolbow, the plaintiff being a party to that fraud, could not recover back the consideration money from him—*In pari delicto melior est conditio possidentis.*

So that the case stands thus: if Dolbow had no right to sell the property to the plaintiff, then his interest was the same, which ever way the suit might terminate. And if he had a good title to the property and a right to sell it when he did, to the plaintiff, he would not be liable to respond to him ; and therefore, in either case, he was a competent witness, and ought not to have been rejected. *Van Nuys* v. *Terhune,* 3 *Johns. Cases,* 82.

But secondly, the defendant's counsel insists that the evi-

dence offered, was inadmissible. 1st. Because it was " *res in-
ter alios acta* "—" an agreement and conversation between the
plaintiff and the witness about their own affairs." And 2d, that
*parol* evidence of the sale of the property in question, was un-
lawful. under the statute of frauds.

But the answer to these objections is obvious. *First*, as to
the sale and transfer of the property, being " *res inter alios
acta.*" This is a misapplication of the maxim ; such a use of
it would prevent a man from shewing a deed or title for his
land, when a stranger had once got possession of it. Besides,
in this case, the evidence offered, was to prove a bargain and
sale made in the presence of the party, and thus to connect him
with the transaction.

Then, as to the statute of frauds. It is said, the property
in question, being above the price or value of thirty dollars,
parol evidence of the bargain and sale of it, was inadmissible.
This objection certainly does not lie in the mouth of the defend-
ant. If there had been no compliance with the requisitions of
the statute, the contract could not have been enforced, as be-
tween the parties to it. But the statute was not made to pro-
tect *trespassers* : yet such would be the operation of it, if this
objection could be sustained by the defendant.

In support of this objection, the counsel for the defendant,
with more ingenuity then soundness of argument, has laid hold
of the general rule that the possessor of chattels is presumed
to be the owner of them ; and then insists that as the property
in question was found in the possession of Dolbow, it was ne-
cessary for the plaintiff to produce some *written* evidence of the
sale, shewing that Dolbow's possession was consistent with the
plaintiff's title. This argument takes for granted two things.
First, that the plaintiff, because out of possession, could not
prove title by parol ; which is not true ; and secondly, that the
possession of Dolbow was fraudulent ; which cannot be pre-
sumed, but must be proved. Admitting, for the sake of the ar-
gument, that an absolute sale, either by *parol* or in writing, un-
accompanied by possession, is void as against creditors ; yet
this is no reason for excluding the evidence of the sale. It is
the judgment of law upon the evidence in the case, and not a
ground to exclude the evidence.

This witness then, having been improperly rejected, the judgment must be reversed : and here we might terminate our inquiries. But there is another error assigned, which if true in fact, is equally fatal.

The plaintiff, on the trial of the appeal, called Samuel Sherron as a witness, and offered to prove by him, the admission of the defendant, that he knew it was the plaintiff's property when he took it ; and that he would not have taken it if Gabriel Dolbow and John Summerill had not indemnified him. This evidence was objected to, on the ground, that although the witness had been sworn on the trial below, yet that it appeared by the transcript he had been sworn and examined before the justice *only* to prove a witness there offered by the defendant, to be interested ; and that therefore, Samuel Sherron could not now be examined to any other matter ; and of this opinion was the Court of Common Pleas.

In support of this decision, it is insisted that if the act of 12th February, 1818, (*Rev. Laws* 629, *sec.* 37) which says, that " no other documents, proofs, or witnesses," shall be admitted on the appeal, does not exclude the evidence, yet that by the supplement passed the 23d November, 1821, it is rendered incompetent. The language of the supplement is, " the parties to the said appeal, shall be confined to the same evidence that was offered upon the trial before the justice." The argument seems to derive some support from what was said by Kirkpatrick, C. J. in *Price & ux.* v. *Ward*, 2 *Halst.* 127, but the point was not involved or settled in that case. That was an attempt to impeach a witness on the appeal, by introducing *new witnesses* for that purpose, not sworn before the justice.

Notwithstanding what was said in that case, I cannot bring my mind to assent to the broad proposition that no evidence is to be given on the appeal, but that which was given in the court below. Such a construction would lead to interminable disputes, and would, *if perfect identity of evidence* is required, be utterly impracticable, unless the testimony given below, is all reduced to writing, and if *perfect* identity is not required, what becomes of the rule of construction contended for. The words employed, are, " shall be confined to the same evidence." If we adopt a strict construction, we must confine the

parties, not only to evidence upon the same points, or subject matter, but to the very " same evidence " upon every point; not only so, but every question put to a witness must be the same. If then the same witness varies in the least from his former testimony; if he recollects either more or less than he did before, if, upon more reflection, he qualifies, adds to or explains his former testimony—nay, if he does not use precisely the same words, it is not the " same evidence." If we restrain the words to mean, evidence to the *same point,* or about *the same subject matter,* we shall take quite as much liberty with the statute, and find ourselves in no less difficulty in the end.

My opinion therefore is, that the provision in the fourth section of the act of 23d November, 1821, means nothing more than that *new* witnesses shall not be introduced on the appeal, except to prove *newly discovered evidence ;* to do which, the affidavit mentioned in the act, is required.

But as there is some uncertainty in the justice's transcript, whether Sherron, the witness, was sworn in chief, or only to answer such questions as should be put to him touching the interest of defendant's witness, I do not decide the cause on this point. The judgment must be reversed for the reason first mentioned.

Judgment reversed.

CITED in *Ryerson* v. *Marselis,* 1 *Harr.* 452 ; *Ramsey* v. *Dumar,* 4 *Harr* 67 ; *Voorhees* v. *Hendrickson,* 5 *Dutch.* 102 ; *Paulin* v. *Kaighn, Id.* 503.